IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STEAR V. ZLOMKE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

WADE STEAR AND SANDRA STEAR, APPELLEES,

V.

JAMES ZLOMKE, APPELLANT.

Filed March 4, 2025.    No. A-24-173.

Appeal from the District Court for Red Willow County: PATRICK M. HENG, Judge. Affirmed.

Justin M. Daake, of Daake Law Office, L.L.C., for appellant.

Whitney A. Schroeder, of Schroeder & Schroeder, P.C., for appellees.

MOORE, BISHOP, and WELCH, Judges.

MOORE, Judge.

## INTRODUCTION

James Zlomke appeals from an order of the district court for Red Willow County which granted Wade Stear and Sandra Stear grandparent visitation with Zlomke's child. Based on the reasons that follow, we affirm.

## STATEMENT OF FACTS

On February 22, 2023, the Stears filed a complaint for grandparent visitation seeking court-ordered visitation rights with their grandchild, Korra Stear. Korra's parents are Zlomke and K.C. Stear, the Stears' daughter, who is now deceased. Zlomke filed an answer opposing the complaint.

A hearing on the Stears' complaint for visitation occurred in February 2024 when the district court received five affidavits authored by Wade Stear, Sandra Stear, K.C.'s sister, K.C.'s

brother, and Zlomke. The following evidence was adduced, and additional details will be set forth in the analysis section below.

In July 2021, K.C. became seriously ill with complications from COVID-19 while pregnant with Korra. K.C. was initially hospitalized in McCook before being life-flighted to a hospital in Lincoln. There, doctors performed an emergency cesarean section and Korra was born approximately 7 weeks premature. Following her birth, Korra was admitted to the Neonatal Intensive Care Unit and K.C. was placed on a ventilator. Though K.C. and Zlomke had been in a committed relationship since 2017 and were cohabitating at the time of Korra's birth, Zlomke was not approached at the hospital regarding paternity, did not sign an acknowledgement of paternity, and was not listed on Korra's birth certificate.

K.C.'s condition continued to deteriorate in the weeks after she gave birth. On July 23, 2021, based on advice of hospital staff, Sandra filed for and was awarded a temporary guardianship of Korra in Lancaster County Court. Zlomke alleged that he was not named as an interested party or served with notice of any hearing. K.C. died on August 1.

After K.C.'s death, the Stears returned to McCook with Zlomke and stayed in a camper outside of the home that had been shared by Zlomke and K.C. For a few weeks, Zlomke and the Stears, as well as Zlomke's parents, provided care for Korra. The Stears allege that during this time, they had concerns about Zlomke's ability to care for Korra on his own. Additionally, they found it difficult emotionally to spend time in K.C.'s home so soon after her death. In mid-August 2021, the Stears took Korra to their home in Beaver City and later moved to a residence in Arapahoe.

On August 11, 2021, Zlomke filed an acknowledgement of paternity. On August 25, Zlomke filed a complaint to establish paternity in district court. Zlomke alleged that a protracted legal case ensued, with the Stears delaying the return of stipulations and the production of Korra for genetic testing, and failing to voluntarily terminate the temporary guardianship. Zlomke's paternity was decreed in the paternity case on May 27, 2022.

Zlomke alleged that during the temporary guardianship, Korra remained with the Stears and he was only allowed to see Korra during a few short visits. Zlomke did not see Korra at all from November 2021 to August 2022, when a court-ordered visitation plan was implemented. The Stears did not grant Zlomke's requests for visits with Korra on at least six different occasions. The Stears acknowledge that when they moved with Korra back to their home, they "had every intention of prioritizing" Zlomke's ability to see Korra, but that a breakdown in communication eventually occurred. The Stears refer to "several altercations." The Stears allege that while Korra resided with them, she formed a bond with the Stears as well as with K.C.'s sister and brother and Korra's cousins.

The guardianship was terminated on September 25, 2022, and Korra was placed in Zlomke's care and custody on the same day. The Stears have not seen Korra since then. Korra was 14 months old at this time.

In an order filed on February 21, 2024, the district court granted the Stears' grandparent visitation on the third Sunday of each month from 1 p.m. to 7 p.m., as well as 6 days of consecutive grandparent visitation during the month of July.

Zlomke appeals.

## ASSIGNMENT OF ERROR

Zlomke assigns that the district court erred in granting the Stears' request for grandparent visitation.

## STANDARD OF REVIEW

Determinations concerning grandparent visitation are initially entrusted to the discretion of the trial court, whose determinations on appeal will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial court's discretion. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021).

## ANALYSIS

The grandparent visitation statutes, Neb. Rev. Stat. §§ 43-1801 to 43-1803 (Reissue 2016), permit a grandparent to seek visitation with his or her minor grandchild in limited circumstances including, as pertinent here, when the child's parent or parents are deceased. See § 43-1802(1)(a). A grandparent seeking visitation must prove by clear and convincing evidence that (1) there is, or has been, a significant beneficial relationship between the grandparent and the child; (2) it is in the best interests of the child that such relationship continue; and (3) such visitation will not adversely interfere with the parent-child relationship. See, § 43-1802(2); *Lindblad v. Lindblad, supra*. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *Lindblad v. Lindblad, supra*. The statute further provides that the evidence may be presented by affidavit. See § 43-1802(2).

### SIGNIFICANT BENEFICIAL RELATIONSHIP

Zlomke first argues that the district court abused its discretion in finding that the Stears have a beneficial relationship with Korra. Zlomke asserts that while there may have been a significant relationship during the time that Korra was living with the Stears, "that relationship was only allowed to exist due to the intentional parental alienation that [the Stears] engaged in throughout the first 14 months of Korra's life." Brief for appellant at 12.

While addressing the first requirement of § 43-1802(2), the district court found that the affidavits offered by the Stears and their children "sets forth many examples of the significant beneficial relationship between the [Stears] and Korra in the first year of her life." Additionally, Zlomke had acknowledged the existence of the relationship in his affidavit. Thus, the Stears had established this requirement by clear and convincing evidence.

The evidence demonstrates that the Stears were Korra's primary caregivers from mid-August 2021 to September 2022. The Stears' affidavits generally allege that while Korra was in their care, she had her own bedroom in the Stears' home, spent time with her maternal family members, and had her basic needs met. K.C.'s sister and brother, in their respective affidavits, articulate a desire to take Korra fishing, camping, and on outings to the zoo in the future, but little detail is provided regarding the relationship previously shared between the Stears and Korra.

However, in Zlomke's own affidavit, he stated that he does not "deny that the Stears had a 'significant beneficial relationship' with Korra during the time that she was in their exclusive care." We acknowledge Zlomke's frustration that this relationship was only formed after Korra's temporary guardianship was awarded to the Stears without Zlomke's participation. The length of

the relationship was achieved because the Stears were apparently averse to Zlomke's complaint to establish paternity. Nonetheless, regardless of the reason for the Stears' custody and care of Korra for the first 14 months of her life, the evidence establishes that the Stears had a significant beneficial relationship with Korra as her caregivers.

We conclude that the district court did not abuse its discretion in finding that the Stears presented clear and convincing evidence of a significant beneficial relationship with Korra. See *State on behalf of Daphnie F. v. Christina C.*, 310 Neb. 638, 967 N.W.2d 690 (2021) (abuse of discretion occurs when trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence).

BEST INTERESTS

Zlomke next argues that the district court abused its discretion in shifting the burden of proving best interests to Zlomke and in finding that maintaining the grandparent-grandchild relationship was in Korra's best interests. Zlomke contends that he was not required to submit any evidence regarding the best interests' requirement because under Nebraska law, Zlomke's decision to withhold grandparent visitation is presumed to be in Korra's best interests.

The district court found that the Stears, particularly K.C.'s sister in her affidavit, set forth "many valid reasons why the relationship should continue." These reasons include that Korra has maternal family members who cared for her as an infant and want to maintain a relationship with her, that the Stears desired to support Zlomke in his parenting by offering childcare when necessary, and that the Stears can provide Korra with a connection to her mother. The court also noted that it was clear that the Stears and their family members love Korra and want to ensure that Korra remains involved with her mother's family.

The district court found that Zlomke had failed to demonstrate why grandparent visitation would not be in Korra's best interests, as he had only argued that visitation would adversely interfere with his relationship with Korra. The court observed that Zlomke's position on Korra's best interests related more to the last requirement of § 43-1802(2). The court noted that there was no evidence (aside from past conflict between the parties) which suggested that visitation would not be in Korra's best interests, and Zlomke had failed to submit evidence showing that time spent with Stears had been detrimental to Korra. Thus, the Stears had established this requirement by clear and convincing evidence.

Zlomke relies on principles established in *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), which provide that a fit parent is presumed to act in the best interests of his or her child, and although special weight is to be accorded a fit parent's decision regarding visitation, the presumption in favor of a parent's decision is rebuttable. In *Hamit v. Hamit*, 271 Neb. 659, 715 N.W.2d 512 (2006), the Nebraska Supreme Court determined that the requirements in § 43-1802(2) satisfy the principles established in *Troxel v. Granville, supra*. The Nebraska Supreme Court held that although the Nebraska grandparent visitation statutes recognize the interests of the child in the continuation of the grandparent relationship, under Nebraska's grandparent visitation statutes as a whole, the best interests of the child consideration does not deprive the parent of sufficient protection because visitation will not be awarded where such visitation would adversely interfere with the parent-child relationship. *Hamit v. Hamit, supra*.

As discussed below, the district court specifically found that visitation between the Stears and Korra would not adversely impact the parent-child relationship between Zlomke and Korra. The court gave Zlomke's decision regarding visitation the weight it was entitled to based on § 43-1802(2) and *Hamit v. Hamit, supra.* The Stears demonstrated a loving relationship with Korra. The relationship also allows Korra to stay connected with other maternal family members, which may not happen without visits with the Stears. The district court implicitly found that the Stears' evidence had overcome the rebuttable presumption that Zlomke's decision regarding grandparent visitation was in Korra's best interests.

We conclude that the district court did not abuse its discretion in finding there was clear and convincing evidence that it was in Korra's best interests that the relationship with the Stears continue.

### INTERFERENCE WITH PARENT-CHILD RELATIONSHIP

Finally, Zlomke argues that the district court abused its discretion in finding that grandparent visitation would not adversely interfere with the parent-child relationship.

The district court found that the last requirement of § 43-1802(2) was the "main focus" of Zlomke in his position that the Stears' request for visitation be denied. The court noted the history between the parties and the difficulties Zlomke had faced prior to establishing paternity, as set forth in Zlomke's affidavit. The court specifically found that "the parties had a difficult time getting to this point," and that the Stears had done "all they could to forestall the inevitable." The court attributed the strain on the relationship between the parties to the legal delays caused by the Stears.

The district court found that based on his history with the Stears, Zlomke believed that grandparent visitation could only adversely affect his relationship with Korra. The Stears and K.C.'s siblings all acknowledged in their affidavits that some of their past actions had led to conflict with Zlomke and expressed regret for this. The affidavits demonstrate that the Stears and their family members understand that Zlomke is Korra's father.

We agree with the district court that despite evidence of conflicts in the past, there was no evidence to suggest that going forward the Stears will engage in any activity which would interfere with Zlomke's relationship with Korra. Again, we acknowledge that through the actions of the Stears, Zlomke was minimally involved in the first year of Korra's life. However, we agree with the district court's expectation that "the parties will work together to provide the best environment for Korra in the future to have a relationship with her mother's family."

The visitation afforded to the Stears is only one Sunday afternoon per month and 6 days in July. Zlomke will have Korra the rest of time. We conclude that the district court did not abuse its discretion in finding there was clear and convincing evidence that that visitation between the Korra and the Stears would not adversely interfere with the parent-child relationship.

### CONCLUSION

We conclude that the district court did not err in granting grandparent visitation to the Stears. Accordingly, the court's order is affirmed.

AFFIRMED.