IN RE GUARDIANSHIP AND CONSERVATORSHIP OF
KARIN P., AN INCAPACITATED PERSON.
JOHN P., APPELLEE, V. PAULA P., APPELLANT.
716 N.W.2d 681

Filed June 30, 2006.    No. S-05-1056.

Diane B. Metz for appellant.

Chad L. Bowman, of Bowman & Krieger, Attorneys at Law, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

John P. filed a petition in the county court for Lancaster County to have a guardian and conservator appointed for his adult daughter, Karin P. In his petition, John nominated himself to serve as Karin's guardian and conservator, claiming he had priority for appointment because he was Karin's natural father and had been her custodial parent until she reached the age of majority. Paula P., Karin's mother and John's former wife, filed an objection and cross-petition in which she, inter alia, objected to the appointment of a guardian for Karin; alleged that if a guardian was appointed, the guardianship should be a limited guardianship; and asserted that if a guardian was appointed, she should serve as guardian. Following an evidentiary hearing, the county court found that Karin needed a guardian and conservator. The court further determined that Karin's guardian needed full, rather than limited, powers. The court found that John was "best qualified" to serve as Karin's guardian and appointed John as Karin's permanent guardian and conservator. Paula appeals, claiming that the county court erred in establishing a full, rather than a limited, guardianship for Karin; in finding that John was "best qualified" to serve as Karin's guardian; in failing to establish a regular visitation schedule between Karin and Paula; and in ordering Paula to pay certain attorney and guardian ad litem fees. We conclude that under the facts of this case, the county

court did not err in establishing a full guardianship for Karin and in appointing John as Karin's guardian. We further conclude that given John's guardianship powers, the county court did not err in declining to establish a specific visitation schedule between Karin and Paula. Finally, we conclude that given the record in this case, the county court did not err in ordering Paula to pay certain attorney and guardian ad litem fees. We affirm.

## STATEMENT OF FACTS

Karin is the daughter of John and Paula. She was born on May 5, 1985. John and Paula were divorced in 1994, and John was awarded physical custody of Karin, subject to Paula's right of visitation.

The record on appeal details an extensive history of disagreements between John and Paula as to Karin's upbringing. In summary, John and Paula have repeatedly disagreed as to Karin's mental, physical, and functional abilities. The record reflects that Karin suffers from generalized anxiety disorder; pervasive developmental disorder, not otherwise specified; and borderline intellectual functioning. A psychological evaluation performed on Karin in December 2003 and January 2004, a copy of which is in the record, indicates that Karin has a "mildly delayed verbal ability, nonverbal ability in the borderline range, academic achievement generally in the mildly delayed to borderline range, and oral language skills in the borderline range." The same psychological evaluation reflects that

> Karin has not developed peer relationships appropriate to her developmental level, has difficulties with social and emotional reciprocity, displays an impairment in her ability to initiate or sustain conversation with others, and displays some repetitive verbal behavior. She [has] difficulty coping with change.

According to the evaluation, "Karin's difficulties are further compromised by her cognitive skill level and receptive and expressive language deficits, which impact her comprehension of communication and instruction and her skill for responding appropriately during interactions."

Karin attended public school in Lincoln, Nebraska, where she was enrolled in both mainstream and special education classes. In early 2004, while Karin was in 12th grade, John and Paula,

together with several of Karin's teachers, Karin's speech pathologist, and the head of the special education department, attended an individualized education program (IEP) meeting to assess Karin's educational progress and goals. During the meeting, the professionals involved believed that Karin's participation following high school in a program referred to as "Vocational Opportunity in Community Experience" (VOICE) was indicated. VOICE is an educational program designed to provide training for 18- to 21-year-old students who have not yet received their high school diplomas and have disabilities. At the end of the program, qualified students receive their diplomas.

In summary, John believed that the VOICE program would improve Karin's skills to live and work independently. Paula was opposed to Karin's participation in the VOICE program. Although Paula acknowledged that Karin had certain disabilities, Paula believed that Karin essentially functioned socially and developmentally similar to persons her same age. Paula wanted Karin to receive her diploma in the spring of 2004, rather than wait for the completion of the VOICE program, and thereafter enroll in Metropolitan Community College in Omaha, Nebraska.

On May 5, 2004, John filed a petition seeking the establishment of a guardianship and conservatorship for Karin. In his petition, in addition to setting forth the nature of Karin's disabilities, John alleged, inter alia, that a guardianship was necessary because "Paula . . . who is in denial of [Karin's] Borderline Intellectual Functioning, will prevent [Karin] from qualifying for the special vocational training she needs and is entitled to receive from the Lincoln Public Schools through twenty-one (21) years of age." Paula filed an objection and cross-petition, in which she, inter alia, objected to the appointment of a guardian for Karin; alleged that if a guardian was appointed, the guardianship should be a limited guardianship; and alleged that if a guardian was appointed, she should serve as guardian.

Following the filing of John's petition, the county court appointed John to serve as Karin's temporary guardian and conservator. The court also appointed an attorney for Karin. On July 20, 2004, Karin's court-appointed attorney filed a motion to withdraw, stating in the motion that Karin "no longer requests representation" and that "it is no longer in the best interest of [Karin]

for continued representation." The county court sustained the motion to withdraw. Without seeking court approval, Paula subsequently retained another attorney to represent Karin. As a result of an objection raised by Karin's new attorney, Karin's longtime guardian ad litem was removed, and the county court appointed a successor to serve as Karin's guardian ad litem during the guardianship and conservatorship proceedings.

John's petition and Paula's objection and cross-petition came on for an evidentiary hearing beginning on January 6, 2005. A total of nine witnesses testified over the course of the 3-day hearing, and numerous exhibits were received into evidence. On August 2, the county court entered its order establishing a guardianship and conservatorship for Karin. The court determined that both John and Paula had equal statutory priority for appointment, found that John was "best qualified" to serve, and appointed John to be Karin's permanent conservator and guardian with full statutory powers, subject to the conditions that John ensure that Karin receive regular counseling and, further, that John establish a regular visitation schedule between Karin and Paula, provided that visitation was in Karin's best interests. The county court ordered the parties to split the guardian ad litem fees and ordered Paula to pay Karin's attorney fees. Paula appeals from the county court's order.

We note that on appeal, Paula does not challenge the county court's establishment of a conservatorship for Karin or the county court's appointment of John as Karin's conservator. Accordingly, we do not consider rulings relative to the conservatorship.

Additional facts will be set forth below where pertinent to our analysis.

## ASSIGNMENTS OF ERROR

On appeal, Paula assigns four errors, which we restate as three. Paula claims, restated, that the district court erred (1) in establishing a full, rather than a limited, guardianship for Karin and in finding John was "best qualified" to serve as Karin's guardian; (2) in failing to establish and schedule court-ordered visitation between Karin and Paula; and (3) in failing to order that John share in paying Karin's attorney fees and in ordering Paula to pay one-half of the guardian ad litem fees.

## STANDARDS OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Guardianship & Conservatorship of Donley*, 262 Neb. 282, 631 N.W.2d 839 (2001). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Stover v. County of Lancaster, ante* p. 107, 710 N.W.2d 84 (2006).

## ANALYSIS

*The County Court Did Not Err in Establishing a Full, Rather Than a Limited, Guardianship for Karin and in Concluding That John Is "best qualified," Pursuant to Neb. Rev. Stat. § 30-2627(c) (Cum. Supp. 2004), to Serve as Karin's Guardian.*

On appeal, Paula admits that based on "the testimony of the experts in this case . . . a guardianship . . . was necessary or desirable as the least restrictive alternative available for providing continuing care or supervision of Karin." Brief for appellant at 23. Although Paula does not dispute that a guardianship is appropriate for Karin, Paula claims that a limited guardianship would have been more suitable and that Paula, rather than John, was better qualified to act as Karin's guardian.

With regard to the establishment of a limited or full guardianship, Neb. Rev. Stat. § 30-2620 (Cum. Supp. 2004) sets forth the probate court's general power to appoint a guardian. It provides, in relevant part, as follows:

> The court may appoint a guardian if it is satisfied by clear and convincing evidence that the person for whom a guardian is sought is incapacitated and that the appointment is necessary or desirable as the least restrictive alternative available for providing continuing care or supervision of the person alleged to be incapacitated. If the court finds that a guardianship should be created, the guardianship shall be a limited guardianship unless the court finds by clear and convincing evidence that a full guardianship is necessary.

In the instant case, the county court found by clear and convincing evidence that Karin was incapacitated and that the appointment of a guardian was desirable in order to provide

"protective care" for Karin. The county court also found that given the evidence, a full, rather than a limited, guardianship for Karin was required. As noted above, Paula does not dispute that Karin needs the supervision of a guardian. Paula contends, however, that there was not clear and convincing evidence presented that a full guardianship was more appropriate for Karin. We disagree. The record contains evidence regarding Karin's capabilities, and given this record, we conclude that the court did not err in finding by clear and convincing evidence that a full guardianship for Karin was necessary.

The record on appeal contains the testimony of Lorrie Bryant, Ph.D., a clinical psychologist who had been providing therapy to Karin since 1999. Bryant testified during the hearing concerning Karin's condition and her abilities. According to Bryant, at the time of the guardianship hearing, Karin was not functionally able to find a place to live or to enter into a lease agreement for housing, to arrange for medical care for herself, to understand or able to give necessary consents and releases relative to herself, to apply for governmental assistance, to enter into contracts, or to receive and manage money.

Moreover, the record contains copies of a report and a supplemental report prepared by the successor guardian ad litem. In her report, dated January 4, 2005, the successor guardian ad litem stated "Karin exhibits <u>severe qualitative deficits in reciprocal social interaction</u>" and "<u>marked qualitative deficits in verbal and nonverbal communication and in imaginative activity</u>." As a result, the successor guardian ad litem stated that "Karin's disabilities have resulted in: marked restriction of activities of daily living; severe difficulties in maintaining social functioning; and, marked difficulties in maintaining concentration, persistence and pace." By way of example, the guardian ad litem reported that Karin could not follow "simple illustrated cooking instructions (add water, mix, bake)" on a boxed meal. The successor guardian ad litem also reported a situation when Karin missed the bus at her high school. Karin was unable to devise an alternative means to get home, and when a school administrator offered to take Karin home, Karin had difficulty giving the administrator directions to her home. In her report, the successor guardian ad litem stated that she

does not believe this is a case in which is it appropriate to limit the . . . Guardian's powers in the manner requested by the Cross-Petition. Karin's disability broadly affects her ability to make decisions that are in her best interest. . . . The Guardian Ad Litem recommends the appointment of a . . . Guardian with full statutory powers.

In her supplemental report, dated June 6, 2005, the successor guardian ad litem stated that she "continues to believe Karin . . . is in need of a . . . Guardian with full statutory powers."

Pursuant to § 30-2620, a full guardianship may be established if the probate court finds by clear and convincing evidence, as it did in this case, that a full guardianship is necessary for the care of the incapacitated person. An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Guardianship & Conservatorship of Donley*, 262 Neb. 282, 631 N.W.2d 839 (2001). Based upon our review of the record in this case, we conclude that the county court's decision to appoint a guardian with full guardianship powers conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable, see *Stover v. County of Lancaster, ante* p. 107, 710 N.W.2d 84 (2006), and we conclude the county court did not err in finding that a full guardianship was necessary.

Paula also contends that the county court erred in failing to appoint her, rather than John, as Karin's guardian. Neb. Rev. Stat. § 30-2627 (Cum. Supp. 2004) sets forth the requisites for who may serve as a guardian. With certain exceptions not relevant here, § 30-2627(a) provides that "[a]ny competent person or a suitable institution may be appointed guardian of a person alleged to be incapacitated . . . ." Section 30-2627(b) sets forth the priorities for the appointment of a guardian and provides as follows:

Persons who are not disqualified [elsewhere in this statute] and who exhibit the ability to exercise the powers to be assigned by the court have priority for appointment as guardian in the following order:

(1) A person nominated most recently by one of the following methods:

(i) A person nominated by the incapacitated person in a power of attorney or a durable power of attorney;

(ii) A person acting under a power of attorney or durable power of attorney; or

(iii) A person nominated by an attorney in fact who is given power to nominate in a power of attorney or a durable power of attorney executed by the incapacitated person;

(2) The spouse of the incapacitated person;

(3) An adult child of the incapacitated person;

(4) A parent of the incapacitated person, including a person nominated by will or other writing signed by a deceased parent;

(5) Any relative of the incapacitated person with whom he or she has resided for more than six months prior to the filing of the petition;

(6) A person nominated by the person who is caring for him or her or paying benefits to him or her.

Section 30-2627(c) states that the appointment of a guardian shall be in the best interests of the incapacitated person and sets forth the considerations to be taken into account by the court when selecting a guardian. Section 30-2627(c) provides in relevant part: "The court, acting in the best interest of the incapacitated person, may pass over a person having priority and appoint a person having lower priority or no priority. With respect to persons having equal priority, the court shall select the person it deems best qualified to serve."

■ Under § 30-2627(b)(4), John and Paula have equal priority to serve as Karin's guardian. When two persons have equal priority, the Nebraska Probate Code directs the court to appoint the person "best qualified to serve" as guardian. § 30-2627(c). Given the record in this case, we conclude that the county court did not err in appointing John as Karin's guardian.

The record reflects that prior to the commencement of these guardianship and conservatorship proceedings, John had been Karin's custodial parent for more than 10 years, and that while serving as her custodial parent, John had demonstrated an understanding of Karin's abilities and limitations and had provided for her educational and daily living needs. Bryant testified regarding

instances that illustrated John's care of Karin. Based on her testimony, John had a good understanding of Karin's condition. Bryant testified to the effect that John appeared to be attentive to Karin's needs, that he had a good understanding of Karin's capabilities and special needs, and that he had appropriate expectations regarding Karin. Bryant believed and the record shows that John was working toward Karin's best interests.

Barbara Weckman also testified. Weckman is a special education teacher. She was Karin's IEP manager for 3 years while Karin attended high school. As an IEP manager, Weckman was responsible for ensuring that Karin received the special education services she needed. She was also responsible for assisting in the development of Karin's IEP plan, which plan set forth education goals and objectives for Karin. Weckman stated that while Karin was in school, Weckman had frequent contact with John regarding Karin. Weckman testified to the effect that John was attentive to Karin's needs and that he had a good understanding of Karin's abilities.

Susan Hill was Karin's VOICE instructor at the time of the guardianship hearing. Hill testified to the effect that she had observed John in his interactions with Karin and that John was concerned about Karin's well-being, was responsible, and was attentive to her needs.

The record also contains evidence concerning Paula and her understanding concerning Karin's abilities. The record reflects that Paula is a loving and caring parent. The record further reflects, however, that Paula's estimation of Karin's capabilities at the time of the guardianship hearing did not correspond with the opinions developed by the professionals involved in Karin's care and education. Bryant testified concerning Paula's evaluation of Karin's abilities. In summary, Bryant testified to the effect that Paula assessed Karin's "adaptive behaviors" and her daily living, communication, and self-care skills "higher than other evaluation data would suggest."

Weckman testified regarding a 2004 IEP meeting held at the high school, the purpose of which was to determine Karin's education plan after high school. During the meeting, Weckman, as well as the head of the special education department, Karin's

speech pathologist, and John, all agreed that Karin should participate in the VOICE program as the next step in her education. Paula, however, disagreed with the VOICE plan and wanted Karin to go directly to Metropolitan Community College. Weckman essentially testified that in her opinion, Karin was not capable of succeeding in a community college setting.

Finally, the successor guardian ad litem noted that Paula had unrealistic expectations concerning Karin's abilities. In her January 4, 2005, report, the successor guardian ad litem stated that Paula

> still has difficulty recognizing Karin's limitations. In the course of my investigation I have come to the opinion that foregoing the opportunities provided by the VOICE program [and instead] "main-streaming" Karin into the Community College classes . . . would be imprudent; I do not believe Karin is capable of successfully performing in a Community College environment at this point. I am also concerned that [Paula] reported to me that she has allowed Karin to stay out "until midnight" with same-age peers; I believe this puts a young woman like Karin in danger.

In her supplemental report, the successor guardian ad litem recommended that John, rather than Paula, be appointed Karin's guardian.

The record reflects that John has developed experience in caring for Karin in the 10 years that he has had custody of Karin. Numerous witnesses testified as to John's care for Karin. Moreover, John's appointment as guardian was supported by the successor guardian ad litem. The county court's decision naming John as Karin's guardian conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Given the evidence presented in this case, we cannot say that the county court erred in concluding that John was "best qualified" to serve as Karin's guardian. Paula's first assignment of error is without merit.

*The County Court Did Not Err in Declining to Establish and Schedule Court-Ordered Visitation Between Karin and Paula.*

On appeal, Paula claims that the county court erred when it declined to establish a specific visitation schedule between Karin

and Paula. Paula asserts that a visitation schedule similar to the schedule that had been entered following the dissolution of John and Paula's marriage would be appropriate. We conclude that Paula's assignment of error is without merit.

As noted above, the county court named John as Karin's guardian, with full powers, subject to the requirement that John establish a visitation schedule for Karin and her mother, "[p]rovided it is in Karin's best interest[s]." The court's order is consistent with the statutory grant to John of full guardianship powers and with the statute governing the general powers of a guardian. See Neb. Rev. Stat. § 30-2628(2) (Cum. Supp. 2004) (stating that guardian "shall make provision for the care, comfort, and maintenance of [the] ward"). Moreover, the court's order is consistent with the rationale behind guardianship and conservatorship proceedings to promote the best interests of the incapacitated person. Compare *In re Guardianship of Donley*, 262 Neb. 282, 289, 631 N.W.2d 839, 844 (2001) (noting that "an action to appoint a conservator is not an adversarial proceeding, but, rather, is a proceeding to promote the best interests of the person for whom the conservatorship is sought").

In analyzing Paula's assignment of error relating to visitation, we believe that placing the establishment of a visitation schedule in the guardian is anticipated by the statutory duties assigned to John as a guardian with full powers. We further believe that placing the establishment of visitation in the guardian is not an unauthorized delegation of judicial authority. Compare *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988) (in dissolution action, order authorizing child support office to set visitation is delegation of judicial authority unauthorized by Nebraska statute); *Deacon v. Deacon*, 207 Neb. 193, 200-01, 297 N.W.2d 757, 762 (1980) (in action involving disputes regarding frequency and duration of parental visitation privileges subsequent to marital dissolution, order conferring authority on psychologist to determine visitation is "an unlawful delegation of the trial court's duty . . . to determine questions of . . . visitation"), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002); *Lautenschlager v. Lautenschlager*, 201 Neb. 741, 272 N.W.2d 40 (1978) (in dissolution action, visitation agreements and stipulations pursuant

to statute remain subject to court approval throughout minority of child).

The record in this case shows that John intends to permit visitation between Karin and Paula and that he had proposed a visitation schedule during these proceedings. Consistent with the order of appointment, if Paula disputes the visitation schedule established by John because it is not in Karin's best interests, Paula can apply to the court for a change in guardianship on the basis that John is not acting in Karin's best interests. We conclude that the county court's order with regard to visitation conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Paula's second assignment of error is without merit.

*The County Court Did Not Err in Declining to Order John to Share in the Cost of Karin's Attorney Fees and in Ordering Paula to Pay One-Half of the Guardian Ad Litem Fees.*

For her third assignment of error, Paula challenges the county court's order regarding the payment of attorney and guardian ad litem fees. We conclude this assignment of error is without merit.

With regard to the payment of appointed attorney and guardian ad litem fees in guardianship and conservatorship proceedings, Neb. Rev. Stat. § 30-2620.01 (Cum. Supp. 2004) provides, in relevant part, as follows:

> The reasonable fees and costs of an attorney, a guardian ad litem, a physician, and a visitor appointed by the court for the person alleged to be the incapacitated shall be allowed, disallowed, or adjusted by the court and may be paid from the estate of the ward if the ward possesses an estate or, if not, shall be paid by the county in which the proceedings are brought or by the petitioner as costs of the action.

We have stated that a trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion. *Simon v. City of Omaha*, 267 Neb. 718, 677 N.W.2d 129 (2004). In considering a trial court's order concerning the payment of guardian ad litem fees, we have noted that the allowance, amount, and allocation of guardian ad litem fees is a matter within the initial discretion of a trial court, involves consideration of the equities and circumstances of each particular case, and will not be set aside on appeal in the absence of an

abuse of discretion by the trial court. See *Smith v. Smith*, 222 Neb. 752, 386 N.W.2d 873 (1986). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *State ex rel. Jacob v. Bohn, ante* p. 424, 711 N.W.2d 884 (2006).

With regard to Karin's attorney fees, the record reflects that Karin had court-appointed counsel, whose representation was later terminated. The record further reflects that Paula personally hired an attorney to represent Karin and failed to seek further court-appointed counsel for Karin. Given this record, we conclude that the county court did not abuse its discretion in refusing to order John to share in the payment of Karin's attorney fees.

With regard to the guardian ad litem fees, as noted by the county court in its order, John filed the petition in this case, and Paula filed a cross-petition. In this regard, we consider John and Paula each as a "petitioner" pursuant to § 30-2620.01. Given the record in this case, we conclude that the county court did not abuse its discretion in ordering John and Paula, in accordance with § 30-2620.01, to each pay one-half of the guardian ad litem fees. Accordingly, we find no merit to this assignment of error.

## CONCLUSION

For the reasons stated above, we affirm the county court's order establishing a full guardianship and conservatorship for Karin, naming John as Karin's permanent guardian and conservator, and ordering Paula to pay certain attorney and guardian ad litem fees. We also affirm the county court's refusal to enter a specific visitation schedule between Karin and Paula. Accordingly, we affirm the county court's order in this case in its entirety.

AFFIRMED.