Laverne PTACEK, et al., Appellants,

v.

EARTHSOILS, INC., et al., Respondents.

No. A13–1335.

Court of Appeals of Minnesota.

March 31, 2014.

J. Poage Anderson, David H. Redden, Fabian May & Anderson, PLLP, Minneapolis, MN, for appellants.

Paul A. Sortland, Sortland Law Office, PLLC, Minneapolis, MN, for respondents.

Considered and decided by CLEARY, Chief Judge; HALBROOKS, Judge; and SCHELLHAS, Judge.

## OPINION

CLEARY, Chief Judge.

This appeal arises from the sale of crop fertilizer by respondents to appellants for the 2007 growing season and appellants' subsequent contention that the failure of their crops in 2007 was caused by insufficient nitrogen in that fertilizer. Appellants assert that the district court erred by ruling that their negligence claim is barred by the common-law economic-loss doctrine and by granting summary judgment to respondents on that claim. Appellants also assert that the district court abused its discretion by admitting evidence of their crop-insurance claims during the jury trial. We affirm the evidentiary determi-

nation, but reverse the grant of summary judgment and remand.

## FACTS

Respondent Michael McCornack is the owner of respondent Earthsoils, Inc., a company that manufactures different types of plant fertilizer and recommends and sells fertilizers to farmers based on analyses of soil types and field histories. Appellants Laverne and Jeffrey Ptacek are a father and son who farm land that they rent or own in Steele County. Laverne Ptacek has been a crop farmer since 1973, and Jeffrey Ptacek has been a crop farmer since 1986. Respondents recommended and sold fertilizer to appellants in 2007, and appellants applied that fertilizer to fields in which they planted corn seed for the 2007 growing season. In December 2008, appellants filed a complaint alleging that respondents represented to them that the quality and quantity of fertilizer recommended and sold for the 2007 growing season would enable their fields, with sufficient precipitation, to produce a yield of between 180 and 200 bushels of corn per acre. Appellants further alleged that the quality and quantity of fertilizer recommended and sold in 2007 contained an insufficient level of nitrogen to enable such a yield to be produced. Appellants contended that their fields were thus deficient in nitrogen and produced "a yield of less than one-half of what should have been produced ... given the precipitation received during the 2007 growing season," resulting in a significant loss of income. The complaint raised claims of breach of contract, consumer misrepresentation, negligence, breach of express warranty, breach of the warranty of merchantability, and breach of the warranty of fitness for a particular purpose.

Respondents moved for summary judgment, arguing that all of appellants' claims are barred by the economic-loss doctrine. The district court granted summary judgment to respondents on appellants' claim of negligence and denied summary judgment on the remaining claims. The district court held that no claims are barred by the statutory economic-loss doctrine, but that the negligence claim is barred by the common-law economic-loss doctrine.

Before trial, appellants filed a motion in limine requesting that respondents be instructed "not to allude or refer to, directly or indirectly, or question any witnesses regarding [appellants'] crop insurance claims during the trial of this matter." Specifically, appellants sought the exclusion of crop-insurance claim forms that they signed stating that their lost yield was caused 100% by drought. The district court denied this motion, and the insurance forms were admitted as exhibits during the eight-day jury trial held in February 2013. The district court provided the following instruction to the jury during trial:

**No consideration of other sources of payment**

Do not consider whether [appellants] have received payment from other sources.

You have heard testimony about [appellants'] application for crop insurance requesting payment for crop loss due to lack of rain.

This evidence was submitted to you on the sole issue regarding the cause of the alleged crop damage.

You are instructed to decide the total amount of damages based on the evidence presented.

If you do award [appellants] damages, do not deduct payments made to [them] for their crop insurance claims.

At the end of the case, there will be a process to determine how much, if any, amount of [appellants'] damages should

be reduced or paid to third parties due to the crop insurance payments.

The jury returned a verdict finding that Earthsoils did not breach a contract with appellants, did not breach a warranty to appellants, and did not provide false information in the course of selling goods or services.

Appellants moved for a new trial, arguing that the district court's decision to admit the crop-insurance claim forms was an improper evidentiary ruling that constituted prejudicial error. The district court denied this motion, holding that the evidence was relevant to the issue of what caused the lost yield; that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice; that "issues of potential prejudice or improper inferences were properly addressed with the special jury instructions"; and that appellants were competent to provide opinions as to the cause of the lost yield. This appeal follows.

## ISSUES

I. Did the district court err by granting summary judgment to respondents on appellants' negligence claim?

II. Did the district court abuse its discretion by admitting the crop-insurance claim forms into evidence during trial?

## ANALYSIS

**I. The district court erred by granting summary judgment to respondents on appellants' negligence claim.**

■ Appellants first challenge the district court's grant of summary judgment on their claim of negligence. A summary judgment decision is reviewed de novo. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC,* 790 N.W.2d 167, 170 (Minn.2010). The role of an appellate court when reviewing a grant of summary judgment "is to determine whether there are any genuine issues of material fact and whether the [district] court erred in its application of the law." *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn. 1992). The interpretation of a statute and the application of a statute to undisputed facts are legal conclusions that are reviewed de novo. *Weston v. McWilliams & Assocs., Inc.,* 716 N.W.2d 634, 638 (Minn. 2006).

The economic-loss doctrine is "[t]he principle that a plaintiff cannot sue in tort to recover for purely monetary loss—as opposed to physical injury or property damage—caused by the defendant." *Black's Law Dictionary* 590 (9th ed.2009). The doctrine requires parties to contracts to sue under contract principles, as opposed to tort principles, in certain circumstances if they have sustained purely monetary loss, based on the idea that "tort law should not be available as a mechanism to avoid the parties' bargained-for allocation of risk that is reflected in their contract." 27 Michael K. Steenson et al., *Minnesota Practice, Products Liability Law* § 13.15 (2006 ed. & Supp.2013). Thus, a plaintiff's remedy for purely monetary loss may be limited to what is recoverable under the terms of a contract or under the provisions of the Uniform Commercial Code. *Id.*

■ In Minnesota, the economic-loss doctrine is codified in Minn.Stat. § 604.101. "The economic loss doctrine applies to claims only as stated in [section 604.101]." Minn.Stat. § 604.101, subd. 5. Section 604.101 "exhaustively states the economic loss doctrine," and "there is no residual common law economic loss doctrine." Minn.Stat. Ann. § 604.101 reporters' notes (West 2010); *see also* 27 *Minnesota Practice, Products Liability Law* § 13.15 (stating that section 604.101 was

meant to "preclude any residual common law economic loss doctrine").

Section 604.101 "applies to any claim by a buyer against a seller for harm caused by a defect in the goods sold or leased, or for a misrepresentation relating to the goods sold or leased," but does not apply to a claim for injury to a person or to a claim arising from a sale or lease that occurred before August 1, 2000. Minn. Stat. § 604.101, subds. 2, 6. There has been no claim of injury to a person in this case, and the parties have acknowledged that the sale of fertilizer occurred after August 1, 2000. Under section 604.101, the economic-loss doctrine bars a buyer from bringing "a product defect tort claim against a seller for compensatory damages unless a defect in the goods sold or leased caused harm to the buyer's tangible personal property other than the goods or to the buyer's real property." *Id.*, subd. 3. The economic-loss doctrine also bars a buyer from bringing "a common law misrepresentation claim against a seller relating to the goods sold or leased unless the misrepresentation was made intentionally or recklessly." *Id.*, subd. 4.

The district court held that appellants did not assert either a product-defect tort claim or a common-law misrepresentation claim, and that therefore no claims are barred by the economic-loss doctrine under section 604.101. However, the district court held that appellants' negligence claim is barred by the common-law economic-loss doctrine. Because section 604.101 abrogates the common law and sets forth the full extent of the economic-loss doctrine as it applies to bar claims arising on or after August 1, 2000, the district court's holding as to the negligence claim was in error. The district court erred by granting summary judgment to respondents on this claim.

## II. The district court did not abuse its discretion by admitting the crop-insurance claim forms into evidence during trial.

 Appellants challenge the admission of crop-insurance claim forms that they signed that stated that the lost yield was caused 100% by drought. "The admission of evidence rests within the broad discretion of the [district] court and its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion." *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45–46 (Minn.1997) (quotation omitted). "In the absence of some indication that the trial court exercised its discretion arbitrarily, capriciously, or contrary to legal usage, the appellate court is bound by the result." *Id.* at 46.

 Appellants maintain that the insurance forms were not relevant during trial or, if they had any relevance, their probative value was substantially outweighed by their unfairly prejudicial effect. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401 (quotation marks omitted). Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. R. Evid. 403. "Unfair prejudice under rule 403 is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005). Evidence of the existence of insur-

ance "may not be shown to defeat or diminish recovery," but insurance evidence may "become[ ] relevant to prove or rebut an issue arising in the trial of the case, [and thus] may be admissible even though it is prejudicial." *Wilson v. Home Gas Co.*, 267 Minn. 162, 168, 125 N.W.2d 725, 729 (1964).

One of the central issues at trial was the cause of appellants' lost yield. Signed statements by appellants that the lost yield was caused 100% by drought were certainly relevant on the issue of causation. Appellants contend that the evidence was admitted only to show that they are untruthful. But in a case where appellants were claiming that their lost yield was caused by a nitrogen deficiency, evidence that they have made inconsistent declarations as to the cause was relevant and had high probative value. The jury was instructed to use the evidence of the insurance forms for "the sole issue regarding the cause of the alleged crop damage" and not to use it for the improper purpose of diminishing damages.

 Appellants argue that they, as lay witnesses, were not competent to provide opinions as to what caused their lost yield and that therefore the statements made on the insurance forms as to the cause of the lost yield were either irrelevant or had little probative value. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Minn. R. Evid. 602.

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Minn. R. Evid. 701. "The competency of a lay witness to give opinion evidence is peculiarly within the province of the trial judge, whose ruling will not be reversed unless it is based on an erroneous view of the law or clearly not justified by the evidence." *Muehlhauser v. Erickson*, 621 N.W.2d 24, 29 (Minn.App.2000) (quotation omitted).

Laverne and Jeffrey Ptacek have been crop farmers since 1973 and 1986, respectively, and have farmed thousands of acres of land over the years. Given this experience, the district court reasonably concluded that appellants were capable of perceiving growing conditions and forming opinions and inferences as to the causes of crop growth. The district court stated that appellants "are experienced farmers and while they may not be traditional, academic experts, their lay opinion on what caused the crop losses may qualify as admissible opinions based on their knowledge, skill and experience in the area of raising crops." The district court did not abuse its discretion by holding that the insurance forms were relevant; their probative value was not substantially outweighed by the danger of unfair prejudice; appellants were competent to provide opinions as to the cause of their lost yield; and the insurance forms were therefore admissible during trial.

## DECISION

Because Minn.Stat. § 604.101 exhaustively states the economic-loss doctrine and abrogates the common-law economic-loss doctrine, the district court erred by holding that appellants' negligence claim is barred under common law. We therefore reverse the grant of summary judgment on the negligence claim and remand. We affirm the admission of the crop-insurance claim forms into evidence during the jury trial.

Affirmed in part, reversed in part, and remanded.