IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


BRIAN M. V. CYNTHIA A.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


BRIAN M., APPELLEE,

V.

CYNTHIA A., NOW KNOWN AS CYNTHIA H., APPELLANT, AND
JEAN M. AND PATRICK M., INTERVENORS-APPELLEES.


Filed January 19, 2016.    No. A-15-114.


Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Affirmed.

Christopher A. Pfanstiel, of Katskee, Suing & Maxell, P.C., L.L.O., for appellant.

Brent M. Kuhn, of Harris Kuhn Law Firm, L.L.P., for intervenors-appellees.


PIRTLE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

Brian M., who had sole legal and physical custody of his son, W.M., died unexpectedly while proceedings were pending on an application to modify custody filed by W.M.'s mother, Cynthia H. Following Brian's death, the district court for Douglas County granted leave to intervene in the proceedings to Jean M. and Patrick M., who are W.M.'s paternal grandparents. Jean and Patrick requested temporary possession of W.M. and filed a pleading seeking custody of W.M. or alternatively, grandparent visitation. Cynthia opposed the grandparents' requests and counterclaimed, requesting custody of W.M. and unspecified monetary damages based on the grandparents' alleged violation of her constitutional rights as W.M.'s parent.

Initially, in a temporary order, the district court granted Jean and Patrick possession of W.M. and ordered temporary legal custody of W.M. placed with the court. Within 2½ months, however, temporary physical custody of W.M. was transferred to Cynthia, and within 6½ months,

- 1 -

temporary legal custody was transferred to Cynthia. Ultimately, following a bench trial, the court granted Cynthia sole legal and physical custody of W.M. and granted Jean and Patrick grandparent visitation. The court also denied Cynthia's claim for damages and ordered Cynthia to pay her own attorney fees and the fees of the court-appointed guardian ad litem (GAL). Cynthia appeals, raising a number of issues; we affirm.

BACKGROUND

Brian and Cynthia, who were never married, are the parents of W.M., born in 2008. Although the record before us does not contain either document, the record discloses that the original paternity decree was entered in June 2010 and a modification order was entered on September 28, 2011. In the modification order, the district court granted Brian, who lived in Nebraska, sole legal and physical custody of W.M. The record further discloses that Cynthia has resided solely in Tennessee since 2011.

On October 28, 2011, one month after the district court granted custody of W.M. to Brian, Cynthia filed a "Verified Application for Modification of Custody, Child Support and Supervised Visitation." On January 23, 2013, while her application was still pending (the record does not reveal what action, if any, occurred between October 2011 and this date), Cynthia filed a "Motion for Temporary Custody, Child Support and Visitation and for Removal from the State of Nebraska," and on April 8, she filed a motion for appointment of a GAL, which the court granted on June 19. In its order appointing the GAL, the court ordered Cynthia to bear the cost of the GAL.

On October 2, 2013, before Cynthia's application to modify had been resolved, Brian died unexpectedly. The record reflects that on that date, Jean received a phone call that Brian had failed to pick up W.M. from school. Jean picked up W.M. and drove to Brian's house, where W.M. entered the house and discovered his deceased father. Immediately following Brian's death, W.M. stayed with Jean and Patrick, his grandparents.

On October 7, 2013, Jean and Patrick filed (1) a motion for leave to intervene in the proceedings on Cynthia's application to modify custody, (2) an "Application for Modification" seeking sole legal and physical custody of W.M. or alternatively, grandparent visitation, and (3) a motion for an ex parte temporary order of possession of W.M. On October 7, 2013, the court granted Jean and Patrick leave "to intervene for the purpose of filing an Application for Modification with respect to the custody and parenting time and/or visitation of the minor child." The court also entered an ex parte order that same day granting Jean and Patrick temporary possession of W.M. The court scheduled an evidentiary hearing on continuation of the temporary order for October 11.

On October 8, 2013, Cynthia filed a motion to dismiss her pending application to modify custody. She also filed a motion to dismiss the GAL; she supported that request by referring to the motion to dismiss her application which had been filed that same day.

The evidentiary hearing on the issue of temporary possession of W.M. began on October 11, 2013. Jean and Patrick testified, as did Cynthia and her husband, Marcus H. Although the pleading Jean and Patrick filed just days earlier included a request for sole legal and physical custody of W.M., both grandparents testified they were not seeking custody of W.M.; rather, they sought only temporary possession of W.M. until Christmas break, at which point W.M. would move to Tennessee to live with his mother. The grandparents believed this schedule would ease

W.M.'s transition and allow him to deal with the death of his father. Cynthia and Marcus both testified to their close relationships with W.M.; Cynthia believed temporarily living with his grandparents would unnecessarily prolong his transition to Tennessee.

At the conclusion of the hearing, the court indicated it wanted to hear from the GAL, who was out of town and unable to attend the hearing, before making a decision. The court denied Cynthia's motion to discharge the GAL and continued the hearing so the GAL could testify. The court left temporary possession of W.M. with his grandparents and placed temporary legal custody of W.M. with the court.

On October 18, 2013, prior to the continued hearing on temporary possession of W.M., Cynthia filed an answer and counterclaim to Jean and Patrick's application to modify. In her counterclaim, Cynthia sought sole legal and physical custody of W.M., unspecified monetary damages for Jean and Patrick's alleged "deprivation of her Constitutional Rights," and an award of attorney fees and costs.

The hearing on temporary possession of W.M. continued on November 19, 2013. The GAL, Kelle Westland, testified she met with W.M. and the grandparents following the last hearing. During their meeting, W.M. told the GAL he was not ready to leave his grandparents' house. The GAL believed Christmas break would be a good transition time and recommended that before the transition, the parties work out a parenting plan for grandparent visitation, which the GAL believed was important given W.M.'s "significant bond" with his grandparents.

At the conclusion of the hearing on November 19, 2013, the court found it was in W.M.'s best interests to transition to living with his mother in Tennessee on December 21, 2013. On April 24, 2014, on Cynthia's motion, the court also placed temporary legal custody of W.M. with Cynthia.

On April 4, 2014, Cynthia filed a motion for attorney fees pursuant to Neb. Rev. Stat. § 25-824(2) (Reissue 2008), alleging the grandparents' attempt to seek sole legal and physical custody of W.M. was frivolous. On April 24, the court denied Cynthia's motion.

On May 28, 2014, Jean and Patrick filed a motion for partial summary judgment on Cynthia's counterclaim for damages and attorney fees. On June 18, the court granted the motion, reasoning the grandparents "have every right under Nebraska law to seek visitation . . . [and] the grandparent visitation statutes do not provide for an award of fees."

On September 23, 2014, the matter proceeded to a bench trial on Jean and Patrick's request for grandparent visitation and Cynthia's counterclaim seeking sole legal and physical custody of W.M. We discuss the pertinent trial testimony in the section of our analysis addressing the issue of grandparent visitation. At the conclusion of trial, the court found Jean and Patrick had proven by clear and convincing evidence that they had a significant beneficial relationship with W.M., that grandparent visitation would not interfere with the parent-child relationship, and that it was in W.M.'s best interests to continue his relationship with his grandparents. The court approved Jean and Patrick's proposed "grandparent parenting plan," with minor changes. The plan granted Jean and Patrick, in pertinent part, two weeks of visitation in Nebraska during W.M.'s summer break and visitation twice per year in Tennessee for periods not to exceed 7 days. The court also granted Cynthia sole legal and physical custody of W.M. The court reiterated that Cynthia's claims for damages and attorney fees were denied. The written order reflecting the court's judgment was filed on January 7, 2015.

During the course of the proceedings described above, the court entered orders on November 21, 2013, and October 14, 2014, approving the GAL's fees in the amount of $11,095 for services provided between July 8, 2013, and September 16, 2014. The court ordered Cynthia to pay the fees.

Cynthia timely appealed to this court.

## ASSIGNMENTS OF ERROR

Cynthia assigns, restated, that the district court erred in (1) allowing Jean and Patrick to proceed with their motion to intervene, motion for temporary possession of W.M., and "Application for Modification"; (2) giving temporary possession of W.M. to Jean and Patrick; (3) granting Cynthia temporary parenting time rather than physical custody of W.M.; (4) placing temporary legal custody of W.M. with the court; (5) refusing to discharge the GAL; (6) granting Jean and Patrick grandparent visitation; (7) refusing to award damages or attorney fees to Cynthia; (8) placing any weight or credibility in the GAL's opinion; and (9) taxing the GAL's fees to Cynthia.

Although Cynthia does not specifically assign error on this point, she argues the district court lacked subject matter jurisdiction pursuant to the Uniform Child Custody and Jurisdiction Enforcement Act (UCCJEA), Neb. Rev. Stat. § 43-1226, *et seq.* (Reissue 2008). Notwithstanding her failure to specifically assign this as error, an appellate court has a duty to determine whether the lower court had subject matter jurisdiction to enter the judgment or other final order sought to be reviewed. *In re Estate of Andersen*, 253 Neb. 748, 572 N.W.2d 93 (1998). Therefore, we address the issue.

## STANDARD OF REVIEW

In considering whether jurisdiction existed under the UCCJEA, when the jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law, which requires an appellate court to reach a conclusion independent from the trial court. *Carter v. Carter*, 276 Neb. 840, 758 N.W.2d 1 (2008).

Determinations concerning grandparent visitation are initially entrusted to the discretion of the trial judge, whose determinations, on appeal, will be reviewed de novo on the record and affirmed in the absence of abuse of the trial judge's discretion. *Hamit v. Hamit*, 271 Neb. 659, 715 N.W.2d 512 (2006). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Id.*

The appointment of a guardian ad litem for a minor child is a matter within the discretion of the trial court. *Robinson v. Robinson*, 236 Neb. 879, 464 N.W.2d 193 (1991).

The allowance, amount, and allocation of guardian ad litem fees is a matter within the discretion of a trial court. *In re Guardianship & Conservatorship of Karin P.*, 271 Neb. 917, 716 N.W.2d 681 (2006).

When attorney fees are authorized, the trial court exercises its discretion in setting the amount of the fee, which ruling we will not disturb on appeal unless the court abused its discretion. *In re Guardianship of Brydon P.*, 286 Neb. 661, 838 N.W.2d 262 (2013).

## ANALYSIS

*District Court's Subject-Matter Jurisdiction Under UCCJEA.*

Cynthia argues the district court "should have declined jurisdiction under the U.C.C.J.A. [sic] . . . as this grandparent custody, and modification action, does not fall within its purview." Brief for appellant at 40. She contends the court was aware that she had resided in Tennessee "in excess of six months," that Brian passed away on October 2, 2013, and that upon Brian's passing, "neither of the child's parents lived in Nebraska." Brief for appellant at 40. Cynthia fails to explain how these facts lead to the conclusion that the court lacked jurisdiction; she merely asserts: "Therefore, by way of analogy, the U.C.C.J.A. [sic] gives this Appellate Court guidance, and should have led the Trial Court to decline jurisdiction, to the State of Tennessee." Brief for appellant at 40.

Jurisdiction over child custody proceedings is governed by the UCCJEA. Neb. Rev. Stat. § 42-351(1) (Reissue 2008); *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006). The UCCJEA defines a "[c]hild custody proceeding" as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." Neb. Rev. Stat. § 43-1227(4) (Reissue 2008). Because custody and visitation are at issue, this action qualifies as a child custody proceeding subject to the UCCJEA.

The UCCJEA contains rules for exercising exclusive, continuing jurisdiction over a child custody determination. *Watson, supra*. The pertinent provision states that except in cases of abuse or abandonment warranting the exercise of temporary emergency jurisdiction under Neb. Rev. Stat. § 43-1241 (Reissue 2008) (which is not applicable here):

[A] court of this state which has made [an initial child custody determination] has exclusive, continuing jurisdiction over the determination until:

(1) a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Neb. Rev. Stat. § 43-1239(a) (Reissue 2008).

The district court for Douglas County made the initial child custody determination concerning W.M. when it entered the original paternity decree in July 2010. It exercised its exclusive, continuing jurisdiction when it modified that decree in September 2011, granting Brian sole legal and physical custody of W.M. It again exercised its exclusive, continuing jurisdiction when Cynthia filed her application to modify custody in October 2011, which remained pending at the time of Brian's death. At no point was there a judicial determination pursuant to § 43-1239 that the district court's exclusive, continuing jurisdiction had terminated. See *Watson, supra* (explaining that exclusive, continuing jurisdiction under the UCCJEA remains until the district court makes a contrary determination under § 43-1239). In fact, at the time Jean and Patrick intervened in the action, any such determination would have been improper, since W.M. still resided in Nebraska, he had a substantial connection with Nebraska, and there was substantial

evidence available in Nebraska concerning his care, protection, training, and personal relationships. Therefore, the district court had jurisdiction pursuant to the UCCJEA to address the issues of custody and grandparent visitation.

*Assignments of Error Concerning Jean and Patrick's*
*Pursuit of Custody and Court's Temporary Orders.*

Five of Cynthia's assignments of error relate either to Jean and Patrick's pursuit of custody of W.M. or to the district court's temporary orders concerning his custody. These assignments of error are that the district court erred in (i) allowing Jean and Patrick to proceed with their motion to intervene, motion for temporary possession of W.M., and "Application for Modification"; (ii) giving temporary possession of W.M. to Jean and Patrick; (iii) granting Cynthia temporary parenting time rather than physical custody of W.M.; (iv) placing temporary legal custody of W.M. with the court; and (v) placing any weight or credibility in the opinion of the GAL (it is only the GAL's testimony at the November 19, 2013, hearing on temporary possession of W.M. that Cynthia challenges). The common theme among the arguments Cynthia offers in support of these assigned errors is that no authority permitted Jean and Patrick to seek custody of W.M., temporary or otherwise, or authorized the district court to grant them custody of W.M.

We need not address any of Cynthia's assignments of error challenging Jean and Patrick's pursuit of custody or the district court's temporary orders. Jean and Patrick abandoned their pursuit of custody at the October 11, 2013, hearing on the issue of temporary possession of W.M., only 4 days after they intervened in the action. At the October 11 hearing, they made it clear they were not pursuing custody of W.M.; rather, they asked only that W.M.'s move to Tennessee be delayed until Christmas break to ease his transition and allow him to deal with the loss of his father. Their focus was on W.M.'s best interests and on helping him through a difficult time, not on asserting any claim or right to custody.

Furthermore, any issues concerning the court's temporary orders, which granted Jean and Patrick's request to delay W.M.'s transition to Tennessee, are moot. A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004). Although the court placed temporary possession of W.M. with Jean and Patrick until December 21, 2013, and placed temporary legal custody of W.M. with the court until April 24, 2014, the court thereafter granted Cynthia temporary legal and physical custody of W.M., and ultimately granted her permanent sole legal and physical custody of W.M. The order of permanent custody rendered any issues concerning the prior temporary orders moot. *Id*. We recognize that in the district court Cynthia sought "damages" as a result of the court's temporary orders, which might otherwise have prevented any issues surrounding the temporary orders from being moot; however, because Cynthia does not argue the issue of her entitlement to "damages" on appeal, thus abandoning this claim, we need not address the propriety of the temporary orders. See *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015) (an appellate court need not engage in an analysis that is not necessary to adjudicate the case before it).

We also note that in arguing the district court erred in allowing Jean and Patrick to proceed with their "Application for Modification," and in arguing the district court erred in granting temporary possession of W.M. to Jean and Patrick, Cynthia makes arguments or assertions that

could be construed as challenging the procedural propriety of Jean and Patrick's request for grandparent visitation. For example, in arguing it was error to grant temporary possession to Jean and Patrick, Cynthia asserts, "[t]he grandparents in the instant case could have filed the petition to establish grandparent visitation rights, but failed or refused to do so, properly." Brief for appellant at 14. Cynthia cites Neb. Rev. Stat. § 43-1803(1) (Reissue 2008), which provides in part that a "grandparent seeking visitation shall file a petition in the district court." She also cites *Vrtatko v. Gibson*, 19 Neb. App. 83, 800 N.W.2d 676 (2011), as an example of a paternity case in which the grandparents properly filed a "*petition* seeking court ordered grandparent visitation." Brief for appellant at 14.

Cynthia has failed to persuade us that any procedural irregularity in Jean and Patrick's request for grandparent visitation requires reversal. While Cynthia asserts on appeal that Jean and Patrick did not "properly" petition to establish grandparent visitation rights, brief for appellant at 14, it is unclear exactly in what manner Cynthia believes Jean and Patrick's request for grandparent visitation was improper. Given her citation to *Vrtatko*, it could be that Cynthia believes Jean and Patrick should not have intervened in the pending paternity modification action but should have initiated a new proceeding by filing a separate petition in the district court. Or, it could be that Cynthia believes that it was permissible for Jean and Patrick to intervene but believes they should have filed a petition for grandparent visitation rather than requesting grandparent visitation in an "Application for Modification." Regardless of which procedural irregularity Cynthia intended to raise, she is not entitled to reversal, as we now explain.

As Cynthia points out, § 43-1803 provides that a grandparent seeking visitation shall file a petition in the district court in which the child resides or, if dissolution proceedings have been initiated, in the district court in which the dissolution was had or is still pending. The statute also outlines the contents to be included in the petition and provides that "[t]he form of the petition and all other pleadings required by this section shall be prescribed by the Supreme Court." § 43-1803(1). Nebraska Supreme Court Rule § 4-301 (rev. 2008) provides in pertinent part that "[a] petition for grandparent visitation pursuant to Neb. Rev. Stat. § 43-1803 shall be so captioned and shall contain the information required by statute."

Before the district court, the only procedural objections to Jean and Patrick's request for grandparent visitation came at the October 11 and November 19, 2013, hearings on the issue of temporary possession of W.M. At the beginning of the October 11 hearing, Cynthia's counsel orally requested that the "matter be dismissed" on the following basis:

> I don't believe there's any statutory authority to come before this Court and request, essentially, temporary custody of this child, nor is there any statutory authority to request temporary grandparent visitation rights.
>
> Certainly they can intervene in an action and after a trial and, clear and convincing evidence, establish grandparent visitation rights, but at this stage of the proceedings, Judge, there's just -- there's no authority or no avenue to do so, Judge.

At the conclusion of the same hearing, Cynthia's counsel again stated that he did not "believe there's any statutory authority for this type of proceeding." He then stated:

> We certainly understand why the Court would enter an ex parte order, with a parent passing away, the other parent being in Tennessee. But for the intervenors to petition this Court for

custody, temporary or otherwise, or temporary grandparent visitation rights, they certainly have not met their burden, Judge. Would ask that it be dismissed.

At the continuation of the temporary hearing on November 19, Cynthia's counsel asserted, without explanation, "Judge, I think it's absurd that the Court is maintaining jurisdiction over this child in contravention of my client's rights. I don't know any other way to say it."

At the September 23, 2014, bench trial, Cynthia again raised the issue of the temporary orders in the context of her counterclaim for damages, but, as we have explained, Cynthia does not argue her entitlement to "damages" on appeal, thus abandoning this claim. At the bench trial, Cynthia did not make any procedural objections to Jean and Patrick's request for permanent grandparent visitation rights.

We construe Cynthia's objections at the October 11 and November 19, 2013, hearings to be directed at the issues of temporary custody and "temporary grandparent visitation rights." At no point did Cynthia object to any procedural defect in Jean and Patrick's request for *permanent* grandparent visitation rights. In fact, Cynthia's counsel acknowledged at the beginning of the October 11 hearing that Jean and Patrick "[c]ertainly" could "intervene in an action" and after producing clear and convincing evidence at trial "establish grandparent visitation rights." It was only the custody and temporary grandparent visitation aspects of Jean and Patrick's "Application for Modification" to which Cynthia objected on procedural grounds. Thus, Cynthia cannot now argue on appeal that Jean and Patrick's request for permanent grandparent visitation rights was procedurally defective, either because it was not captioned as a "petition for grandparent visitation pursuant to Neb. Rev. Stat. § 43-1803" as required by rule, or because it did not include the information required by Neb. Rev. Stat. § 43-1803(1), or because it should have been filed in a separate action rather than in the pending paternity modification proceedings. See *First Express Servs. Group v. Easter*, 286 Neb. 912, 840 N.W.2d 465 (2013) (an appellant cannot raise an issue for the first time on appeal). Furthermore, she cannot challenge the temporary orders on procedural grounds, because as we have discussed, the temporary orders are moot.

We acknowledge that Jean and Patrick did not strictly comply with Nebraska Supreme Court Rule § 4-301 or § 43-1803 in requesting grandparent visitation. However, under the circumstances of this case, in which Cynthia failed to preserve for appeal any procedural objections to Jean and Patrick's request for permanent grandparent visitation, we decline to address these procedural issues. We further note that it is proper for a court to treat a pleading or motion based on its substance rather than its title. See *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014) (it is proper for a lower court judge to look at the substance of the petitioner's actual request, instead of simply the title of the petition); *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005) (interpreting a motion for new trial as a motion to alter or amend the judgment based on the motion's substance). In this case, given that Jean and Patrick quickly abandoned their request for custody of W.M., it was clear to the court and the parties that what Jean and Patrick sought was permanent grandparent visitation rights.

We now turn to the issue of whether Jean and Patrick proved their entitlement to grandparent visitation by clear and convincing evidence.

*Jean and Patrick's Entitlement to Grandparent Visitation.*

Cynthia also assigns that the court erred in granting Jean and Patrick grandparent visitation. Her argument in support of this assignment of error consists of three pages of block quotations of portions of Cynthia's and Marcus's testimony at the October 11, 2013, hearing on the issue of W.M.'s transition to Tennessee. Cynthia fails to discuss any of the testimony from the September 2014 bench trial, either in the argument section of her brief or her statement of facts. She merely asserts that Jean and Patrick failed to establish by clear and convincing evidence the statutory requirements for grandparent visitation.

The grandparent visitation statutes, Neb. Rev. Stat. §§ 43-1801 to 43-1803 (Reissue 2008), permit a grandparent to seek visitation with his or her minor grandchild in limited circumstances, including, as pertinent here, when the child's parent or parents are deceased or when the parents of the minor child have never been married but paternity has been legally established. § 43-1802(1)(a), (c). A court can order grandparent visitation only if the petitioning grandparent proves by clear and convincing evidence that (1) there is, or has been, a significant beneficial relationship between the grandparent and the child; (2) it is in the best interests of the child that such relationship continue; and (3) such visitation will not adversely interfere with the parent-child relationship. § 43-1802(2); *Hamit v. Hamit*, 271 Neb. 659, 715 N.W.2d 512 (2006). The Nebraska Supreme Court has upheld the constitutionality of the grandparent visitation statutes, reasoning they are narrowly drawn and explicitly protect parental rights while taking the child's best interests into consideration. *Hamit, supra.*

As we alluded to above, Cynthia's brief provides little guidance in applying the grandparent visitation statutes to the facts of this case. We would be within our authority not to address the issue because of Cynthia's failure to address the evidence from trial. See *Mandolfo v. Mandolfo*, 281 Neb. 443, 452, 796 N.W.2d 603, 612 (2011) ("A party that assigns error in a proceeding must point out the factual and legal bases that show the error."). Nevertheless, having conducted our de novo review of the record, we conclude the district court did not abuse its discretion in granting Jean and Patrick grandparent visitation. We briefly summarize the pertinent testimony supporting the trial court's decision.

At trial, Jean and Patrick both testified to the strong relationship they had developed with W.M. For the first 8 months of W.M.'s life, Brian and Cynthia resided together; during that time, Jean cared for W.M. on Wednesdays, and Jean and Patrick spent time with him every weekend and every holiday. After Brian and Cynthia's relationship ended, and up until Brian's death, W.M. continued to spend time with Jean and Patrick every weekend, often spending the night at their home. When Jean and Patrick spent time with W.M., they would take him to the zoo, parks, and water parks.

According to Jean and Patrick, following W.M.'s move to Tennessee to live with his mother, they continued to have phone contact with him on a weekly basis and spent 2 weeks with him during July 2014. During the 2-week visit, Patrick flew to Tennessee to pick up W.M. and bring him to Nebraska; he then flew with W.M. to Tennessee at the end of the visit. Jean and Patrick believed their proposed grandparent parenting plan, which was received in evidence, would be in W.M.'s best interests. Jean and Patrick believed it would be beneficial to W.M. to continue his relationship with them.

During her testimony, Cynthia acknowledged that Jean and Patrick had a loving relationship with W.M. and that "they should know each other" and "[t]hey should love each other." However, she thought "that any visitation or anything else should be at [her] discretion because [she is W.M.'s] only living parent." She did not want Jean and Patrick "being able to dig into [her] personal life in regards to [W.M.'s] pediatrician, his school, his counselors, or anybody else."

Based on this evidence, the district court did not abuse its discretion in granting Jean and Patrick grandparent visitation. The first two statutory elements--that a significant beneficial relationship existed between W.M. and his grandparents and that it was in W.M.'s best interests that such relationship continue--were essentially conceded by Cynthia. Regarding the third statutory element--that such visitation will not adversely interfere with the parent-child relationship--Jean and Patrick testified that when they had a 2-week visit with W.M. during July 2014, Patrick flew to Tennessee to pick up W.M. and flew back with him at the end of the visit. There was no evidence that continued visitations in this manner would interfere with the parent-child relationship, especially considering that Cynthia was able to develop a strong relationship with W.M. during the years that Brian had sole legal and physical custody of him in Nebraska, while Cynthia lived in Tennessee. The court did not abuse its discretion in concluding that Jean and Patrick met their burden.

*Discharge of GAL and GAL Fees.*

Cynthia also assigns that the district court erred in refusing to discharge the GAL and in ordering her to pay the GAL's fees. The appointment of a guardian ad litem for a minor child is a matter within the discretion of the trial court. *Robinson v. Robinson*, 236 Neb. 879, 464 N.W.2d 193 (1991). Further, the allowance, amount, and allocation of guardian ad litem fees is a matter within the discretion of a trial court. *In re Guardianship & Conservatorship of Karin P.*, 271 Neb. 917, 716 N.W.2d 681 (2006).

Although Cynthia has separate assignments of error for these issues, she addresses them under one heading in her brief. However, her argument consists of a one-paragraph summary of the pertinent facts, followed by the following conclusion: "The Court abused its discretion." Brief for appellant at 24.

In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued. *Hauptman, O'Brien v. Turco*, 277 Neb. 604, 764 N.W.2d 393 (2009). Where an appellant's brief contains conclusory assertions unsupported by argument, the appellant fails to satisfy this requirement. *Id.* Because Cynthia presents no argument or authority to support her assertion that the court abused its discretion, we decline to address this issue.

*Failure to Award Damages or Attorney Fees.*

Cynthia also assigns that the district court erred in refusing to award her damages and attorney fees. Cynthia does not offer any argument related to damages; therefore, we do not address this issue. *Hauptman, O'Brien, supra.*

Concerning attorney fees, Cynthia argues the district court should have granted her request for fees because Jean and Patrick's action was frivolous. She argues there was no statutory authority for Jean and Patrick to seek custody of W.M. She asserts, "Unless [Jean and Patrick]

thought they were making a good faith attempt to overturn the 14th Amendment to the United States Constitution, they should have voluntarily dismissed their action." Brief for appellant at 29.

Section 25-824(4) provides, in pertinent part, that "the court shall assess attorney's fees and costs if, upon the motion of any party or the court itself, the court finds that an attorney or party brought or defended an action or any part of an action that was frivolous." A frivolous action is one in which a litigant asserts a legal position wholly without merit; that is, the position is without rational argument based on law and evidence to support the litigant's position. *TFF, Inc. v. SID No. 59*, 280 Neb. 767, 790 N.W.2d 427 (2010). The term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous. *Id.*

As we have explained, although Jean and Patrick included a claim for sole legal and physical custody of W.M. in their "Application for Modification," they abandoned the custody portion of their pleading 4 days after filing it; thereafter, their only pending claim was their request for grandparent visitation, which was successful. It is clear that at all times during the proceedings, Jean and Patrick, as well as the district court, were focused on W.M.'s best interests; nothing in the record suggests they had an improper motive. Under these circumstances, the court did not abuse its discretion in denying Cynthia's request for attorney fees pursuant to § 25-824(4).

## CONCLUSION

For the foregoing reasons, the judgment of the district court for Douglas County is affirmed.

AFFIRMED.